[L. A. No. 15064. In Bank.—March 22, 1935.]

MINNIE L. HUNTSBERGER, Respondent, v. PAUL HUNTSBERGER et al., Appellants.

Henry K. Elder and Boyd A. Taylor for Appellants.

Martineau & Stratton and Carl Eardley for Respondent.

PRESTON, J.—This cause, an equitable action to enforce a partial assignment contained in a property settlement agreement, is before us on motion to dismiss the appeal

of certain defendants, or affirm the judgment rendered for plaintiff. The words "defendant" and "appellant" will be hereinafter used to refer to the defendant Paul Huntsberger, plaintiff's former husband. A discussion of the position of the other defendants is unnecessary to a determination of the appeal.

Plaintiff married defendant in the year 1914 and was his wife for some sixteen years. There was no issue of said marriage. During 1929 or early in 1930 defendant became involved in illicit relations with an eighteen year old girl, Dorothy Myers, and was arrested on the charge of statutory rape. Thereafter, and about June 3, 1930, in Los Angeles County, plaintiff filed an action against him for divorce. A few days later, about June 10th, plaintiff and defendant executed a property settlement agreement whereby defendant gave plaintiff practically all of the community estate, together with some $5,700 in cash and likewise agreed to pay for her support and maintenance, so long as she should live and remain unmarried, the sum of $125 a month. To secure the latter payments, defendant executed to plaintiff an assignment whereby she would be paid the sum monthly from the proceeds of certain of his separate property, to wit: an undivided 2/9ths interest in certain real estate under ninety-nine year lease. Plaintiff then dismissed her California divorce action and proceeded to Nevada to establish a residence. All lump sum payments were duly made under said property settlement. Plaintiff sued in Nevada for divorce; the action came on for hearing; defendant voluntarily appeared therein; the property settlement was submitted to and approved by the Nevada court and incorporated in its decree, rendered September 24, 1930, in favor of plaintiff. Defendant took no appeal from this divorce decree and it became final. On September 30th he married the said Dorothy Myers and on October 6, 1930, the criminal case against him was dismissed.

Pursuant to said property settlement and notice thereof, said above-mentioned lessee duly forwarded to plaintiff the sum of $125 each month from June, 1930, to July, 1933, at which time payments were discontinued upon notice from defendant of revocation of the assignment. Thereafter defendant himself sent plaintiff $75 in the month of August, 1933, $100 in September and $100 in October. About Octo-

ber 7th plaintiff filed this suit to enforce fully the partial assignment and for declaratory relief.

Defendant answered with a general denial and cross-complaint to the effect that the property settlement had been obtained from him by force, fear, duress and undue influence, under pressure of pending criminal prosecution; that plaintiff, during their marriage, literally drove him to illicit association with other women; that she divulged the fact of his relationship with Dorothy Myers, culminating in his arrest, knowing that his only escape from prosecution would be through a quick divorce and marriage to said girl; that she planned to offer to secure a divorce within ninety days in Nevada if defendant would agree to a property settlement particularly favorable to her; that subsequent to the divorce his financial condition changed by reason of loss of business and reduction by $\frac{1}{3}$ of the income from his said 2/9ths interest in said lease; that as issue of his marriage with said Dorothy Myers he had two children, aged 11½ months and 2½ years, respectively, and his income was reduced to about $50 a month; that the property settlement was contrary to sections 158 and 159 of the Civil Code and was unenforceable.

Plaintiff answered the cross-complaint denying that she had offered defendant a quick divorce, to enable him to escape prosecution, in return for a favorable property settlement, or otherwise, and in this connection, she alleged that she had a cause of action against defendant for divorce by reason of his infidelity and other acts; that she filed an action in Los Angeles County as aforesaid; that upon being served with summons, defendant stated to her that he would be sent to jail for rape if he did not marry said Dorothy Myers immediately; that a California divorce would be too late to save him, and he begged and pleaded with her to get a divorce in Nevada, threatening that unless she did so, he would dispose of all his property in such a manner that she could never secure any support or alimony from him; that she yielded to said entreaties and threats and dismissed her California action, thereafter securing the Nevada divorce, and that said course of action was not taken in consideration of said property settlement or for any other purpose than good sportsmanship and a desire to help the man she loved keep out of prison.

The cause went to trial and voluminous evidence was received. The court made findings in full accord with the claims of plaintiff. It found that the property settlement, in the light of the circumstances of the parties on the date of its execution, was neither unjust nor unfair and that defendant had acquiesced in and confirmed it by continuing to pay thereunder for approximately three years after dismissal of said criminal case; further, that by acquiescing in said Nevada decree, which approved and adopted said property settlement, and by taking no appeal from said decree, defendant became estopped to dispute the validity thereof. In conformity with these findings judgment was rendered for plaintiff, awarding the specific sums, with interest, due on back payments and declaring her right to future payments so long as she may live and remain unmarried. Defendant appealed and, as above stated, the cause is before us on motion to dismiss the appeal or affirm the judgment.

Review of the record shows abundant evidence to support all findings of the court below. ■■■ This statement will suffice to dispose of a number of defendant's contentions, for example, his claim that the consideration for his signature to the property settlement, to wit: that plaintiff get a quick divorce, was illegal and that his consent to the agreement was obtained by unfair practice and undue influence exercised by plaintiff. The court found that defendant executed the property settlement agreement freely and voluntarily and under the advice of his own independent counsel and not as the result of any duress, menace, fraud, force, fear or undue influence. The evidence warrants the conclusion that plaintiff was induced to get the Nevada divorce by reason of her desire to help defendant and also under influence of his threats that, if she did not do so, he would hide his property and cut her off.

■■■ The contention that the agreement was void as being made in consideration of plaintiff's compounding a felony (making defendant's conviction impossible by enabling him to marry the complaining witness) may be dismissed with the statement that the trial court found that the securing of a divorce was no part of the consideration for the property settlement.

■ But one other point remains to be mentioned. A preliminary clause of the property settlement agreement states that the parties are desirous of settling their property rights and "that all marital obligations between them be permanently settled and adjusted so that the parties hereto may live separate and apart and be free from interference or control by the other party in all respects as if each were unmarried and so that the obligation of the husband for the support and maintenance of the wife may be fixed and determined . . . " Defendant contends that this language renders the agreement void as an attempt to alter marital relationship by contract and establish a limited divorce, and provide for support other than during separation. This contention is without merit. Similar provisions have been frequently before the courts and it has been consistently held that the contract will be construed as a whole, after inquiry by the court into the facts surrounding its execution. Section 159 of the Civil Code provides that "A husband and wife cannot, by any contract with each other, alter their legal relations, except as to property, and except that they may agree in writing to an immediate separation, and may make provision for the support of either of them during such separation."

There is nothing in the contract here involved which is in conflict with the provisions of this statute or which contravenes public policy. The language of a similar case, *Estate of Clover*, 179 Cal. 313, 314 [176 Pac. 452], is in point: "This recital contains no contract between the parties in violation of the law. It is merely stated as a basis for the agreement which follows for a separation and division of their property and an adjustment of their future property rights. Such a contract is expressly authorized by section 159 of the Civil Code." See, also, *Cookinham* v. *Cookinham*, 219 Cal. 723 [28 Pac. (2d) 1045], and cases there cited. Lastly, it may be remarked that these parties had separated and were living apart at the time of execution of the agreement.

No other contentions of defendant merit discussion.

The judgment is affirmed.

Waste, C. J., Shenk, J., Thompson, J., Seawell, J., Curtis, J., and Langdon, J., concurred.